IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| *Plaintiff,* | § § | SA-22-CR-00367-OLG |
| vs. | § § § | |
| (2) JUAN CLAUDIO D'LUNA-MENDEZ, | § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia**

This Report and Recommendation concerns Defendant's Motion to Dismiss Indictment [#55]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#64]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

The Court held a hearing on the motion on June 27, 2023, at which counsel for the Government and Defendant appeared via videoconference. In evaluating Defendant's motion, the Court has considered the Government's response in opposition to the motion [#59], the arguments of counsel at the hearing, and the governing law. For the reasons set forth below, it is recommended that Defendant's motion be **denied**.

## I. Background

Defendant Juan Claudio D'Luna-Mendez is under indictment for being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A). According to Defendant, he came to the United States legally with a Border Crossing Card when he was eight years old in

1

2007.  The card expired while he was still a minor, and Defendant does not have a current visa permitting him to reside in the United States.  Defendant, however, has been living continuously in the San Antonio since he was a child, currently works as a carpenter, and has no prior criminal history.

Defendant was arrested on the charges underlying his current indictment in June 2022 because a tractor trailer containing deceased migrants was registered to someone at the same address as his residence.  Officers searched the residence as part of their investigation into the death of the migrants and found several firearms.  Defendant has consistently maintained that there is no evidence linking him to the migrants' death; nor are the firearms connected to that crime.  Defendant now moves to dismiss the indictment on the basis that 18 U.S.C. § 922(g)(5)(A) violates the Second Amendment under the principles set forth by the Supreme Court in its recent decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, ___ U.S. ___, 142 S. Ct. 2111 (2022).

## II.  Legal Standard

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  Fed. R. Crim. P. 12(b)(1).  If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion.  *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005).  Defendant's motion to dismiss the indictment presents a facial challenge to a federal statute.  The motion raises a question of law and does not require resolution of any disputed facts.  The Court may therefore issue a decision on the motion without any further factfinding.

### III.  Analysis

Again, Defendant is under indictment for being an alien in possession of a firearm while being unlawfully in the United States in violation of 18 U.S.C. § 922(g)(5)(A).  This statute makes it unlawful "for any person – who, being an alien . . . illegally or unlawfully in the United States . . . to . . . possess in or affecting commerce, any firearm . . . ."  Defendant's motion argues his indictment must be dismissed because the statute is unconstitutional under the Second Amendment and the standard set forth by the Supreme Court in *Bruen*.

The Second Amendment dictates that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  The legal question presented by Defendant's motion is whether Congress may constitutionally regulate the right to bear arms of aliens unlawfully in the United States.  To resolve this question, this Court looks to controlling Supreme Court and Fifth Circuit precedent.

In 2008, the Supreme Court held that the Second Amendment confers an individual, as opposed to collective, right and ushered in a period of contemporary jurisprudence on the right to bear arms.  *District of Columbia v. Heller*, 554 U.S. 570, 580 (2008).  Post-*Heller*, the Fifth Circuit adopted a two-step inquiry for analyzing laws that might infringe on the Second Amendment.  *See Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016).  Under this rubric, courts would ask whether the conduct at issue fell within the scope of the Second Amendment right to bear arms, evaluating "whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee."  *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives [NRA]*, 700 F.3d 185, 194 (5th Cir. 2012).  If the burdened conduct fell outside the scope of the Second Amendment, then the law was constitutional, and the inquiry was over.  *Id.* at 194–95.  If the burdened conduct fell within the scope of the Second

Amendment, courts would proceed to step two, where they would determine whether to apply strict or intermediate scrutiny, depending on the nature of the conduct being regulated and the degree to which the challenged law burdens the individual Second Amendment right. *Id.* at 195. This second part of the test became known as means-end scrutiny. *Id.*

In the wake of the Fifth Circuit's articulation of the two-step rubric, the Fifth Circuit repeatedly upheld 18 U.S.C. § 922(g)(5)(A)—the statute challenged here—against Second Amendment challenges. In 2011, the Fifth Circuit held that the Second Amendment does not apply to illegal aliens, as illegal aliens are not "law-abiding, responsible citizens" or "members of the political community," i.e., not included as part of "the people" intended to be protected by the amendment. *United States v. Portillo-Munoz*, 643 F.3d 437, 440–42 (5th Cir. 2011) (quoting *Heller*, 554 U.S. at 580, 635). The Fifth Circuit reaffirmed this holding and the constitutionality of Section 922(g)(5)(A) as recently as 2021. *See United States v. Reyes-Torres*, 832 Fed. App'x 890 (5th Cir. 2021).

Last year, the Supreme Court issued its decision in *Bruen*. The decision repudiated the two-step approach embraced by the Fifth Circuit and other circuit courts of appeals post-*Heller*. In doing so, the Supreme Court explained that "[s]tep one of the predominant framework is broadly consistent with *Heller*," as it "demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2127. However, the Supreme Court held that *Heller* does not support the second step of the framework—means-end scrutiny—because that step allows courts to balance Second Amendment protections with governmental interests and policy considerations. *Id.* The Supreme Court instead held that, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the Government bears the burden to affirmatively prove that "its firearms regulation is part of the

historical tradition that delimits the outer bounds of the right to keep and bear arms."  *Id.* at

2126–27.  In other words, lower courts evaluating the constitutionality of firearms regulation

post-*Bruen* must focus solely on the text of the Second Amendment and "the Nation's historical

tradition of firearm regulation."  *Id.* at 2129–30.

Since *Bruen*, the Fifth Circuit has not addressed a renewed constitutional challenge to

Section 922(g)(5)(A).  Nor has any other district court in this Circuit.  The Fifth Circuit has,

however, addressed a facial challenge to Section 922(g)(8), a related statute regulating firearm

possession by a person subject to a domestic violence restraining order.  In *United States v.*

*Rahimi*, the Fifth Circuit held that Section 922(g)(8) was unconstitutional because it unlawfully

infringed on the right of such persons to bear arms under the Second Amendment.  61 F.4th 443

(5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023).  The Fifth

Circuit reasoned that *Bruen* forbade the court from engaging in any means-end scrutiny and

foreclosed any analysis of the "policy goals meant to protect vulnerable people in our society"

because banning firearms for domestic violence perpetrators was a limitation on the right to bear

arms "our ancestors would never have accepted."  *Id.* at 461 (quoting *Bruen*, 142 S. Ct. at 2133)

(additional quotation omitted).

Reaching this conclusion required the Fifth Circuit to disregard two of its prior

precedents upholding Section 922(g)(8) against Second Amendment challenges.  *See United*

*States v. McGinnis*, 956 F.3d 747 (5th Cir. 2020); *United States v. Emerson*, 270 F.3d 203 (5th

Cir. 2001).  The Fifth Circuit reasoned that *Bruen* had implicitly abrogated both of these

decisions because *Bruen* "fundamentally changed our analysis of laws that implicate the Second

Amendment, . . . rendering our prior precedent obsolete."  *Rahimi*, 61 F.4th at 450–51 (internal

citation and quotation omitted).  Post-*Rahimi*, district courts have struggled with how to

harmonize pre-*Bruen* binding precedent, *Bruen*'s repudiation of means-end scrutiny in the Second Amendment context, and *Rahimi*'s statement that all prior precedent is "obsolete." Some courts have simply concluded that all pre-*Bruen* precedent is no longer good law. *See, e.g.*, *United States v. Connelly*, No. EP-22-Cr-229(2)-KC, 2023 WL 2806324, at \*3 (W.D. Tex. April 6, 2023).

Defendant asks the Court to follow suit, disregard the Fifth Circuit's decision in *Portillo-Munoz* finding Section 922(g)(5)(A) constitutional, and engage in a historical analysis of the regulation of the right of illegal aliens to bear arms as if it were a matter of first impression in this Circuit. Yet the Fifth Circuit is bound by the precedent of previous panels absent an intervening Supreme Court decision or a subsequent *en banc* decision. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir.1 999); *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999). And, of course, this Court is bound by Fifth Circuit precedent. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 442 (5th Cir. 2000). Although the Fifth Circuit in *Rahimi* described all pre-*Bruen* Fifth Circuit precedent on the Second Amendment as obsolete, this statement was made in the context of a challenge to Section 922(g)(8), not Section 922(g)(5)(A), and *Rahimi* was not an *en banc* decision.[1]  *Rahimi* did not expressly abrogate the Fifth Circuit's prior precedent upholding the constitutionality of Section 922(g)(5)(A). And given that the holding in *Portillo-Munoz* was based solely on step one of the Fifth Circuit's pre-*Bruen* test (and not means-end scrutiny), *Portillo-Munoz* was not implicitly overruled by *Bruen* either.

In *Portillo-Munoz*, the Fifth Circuit did not reach the second step of the governing framework and therefore did not engage in the means-end scrutiny repudiated by the Supreme

---

[1] *Rahimi* is an expansive reading of *Bruen*. Notably, the Supreme Court recently granted *certiorari* in *Rahimi*, and so the Supreme Court will soon clarify whether *Bruen* in fact stands for the proposition that **_all_** pre-*Bruen* Second Amendment precedents should be disregarded, even where those precedents did not rely on the means-end scrutiny disavowed by *Bruen*.

Court in *Bruen*.  Rather, the Fifth Circuit focused solely on step one—whether the conduct regulated by Section 922(g)(5)(A), the possession of firearms by illegal aliens, fell within the Second Amendment's protections.  Because the Fifth Circuit concluded that the amendment solely protected law-abiding citizens and members of the political community, as opposed to those unlawfully residing in the United States, the court did not perform any of the impermissible balancing of interests rejected by the Supreme Court in *Bruen*.

The Fifth Circuit's decision in *Portillo-Munoz* is therefore distinguishable from the two prior precedents the *Rahimi* court found to be abrogated by *Bruen*.  *See McGinnis*, 956 F.3d 747; *Emerson*, 270 F.3d 203.  *McGinnis*, the more recent precedent, directly applied the second step of the post-*Heller* framework and engaged in the prohibited means-end analysis, applying intermediate scrutiny to find that Section 922(g)(8) was constitutional because its prohibition on gun ownership of those judged to present a real threat of further domestic violence was "reasonably adapted" to the goal of reducing domestic gun abuse.  956 F.3d at 757–59.  *Emerson* was a pre-*Heller* case that, according to *McGinnis*, applied "some form of means-end scrutiny *sub silentio*" finding a sufficient nexus between firearm possession by domestic violence perpetrators and the threat of lawless violence and would have resulted in the same conclusion under the "later-developed *NRA* approach."  *Id.* (citing *Emerson*, 270 F.3d at 261–64).  Both *Emerson* and *McGinnis* were decisions that employed the means-end analysis directly repudiated by the Supreme Court or some other form of balancing test running afoul of *Bruen*'s mandate.  The Fifth Circuit did not engage in any of this prohibited analysis in *Portillo-Munoz*.

The Eighth Circuit has also concluded that *Bruen* did not overrule *Portillo-Munoz*.  *See United States v. Sitladeen*, No. 22-1010, 2023 WL 2765015 (8th Cir. Apr. 4, 2023).  The Eighth Circuit, like the Fifth Circuit, had previously upheld Section 922(g)(5)(A) as constitutional under

the Second Amendment. *See United States v. Flores*, 663 F.3d 1022 (8th Cir. 2011). In a per curiam one-paragraph opinion, *Flores* relied directly on *Portillo-Munoz* and endorsed its same reasoning that firearm possession by illegal aliens is not conduct that falls within the plain text of the Second Amendment and its protections. *Id.* Post-*Bruen*, the Eighth Circuit in *Sitladeen* held that it remained bound by its prior decision in *Flores* because nothing in *Bruen* cast doubt on the court's previous interpretation of the phrase "the people" and the court had not engaged in any means-end scrutiny or other interest-balancing exercise. 2023 WL 2765015, at *4.

The same conclusion is compelled here. At most, *Bruen* implicitly overruled all Second Amendment precedent engaging in means-end or similar scrutiny. *Portillo-Munoz* did not conduct this type of analysis and remains binding precedent. This Court is therefore not authorized to revisit whether illegal aliens are a part of "the people" in the Second Amendment, as this question has already been decided in this Circuit. Nothing in the Fifth Circuit's decision in *Rahimi* dictates otherwise. Defendant's motion to dismiss the indictment therefore must be denied.

### IV.  Conclusion and Recommendation

Having considered Defendant's motion, the Government's response, the parties' arguments at the Court's hearing, and the governing law, the undersigned recommends that Defendant's Motion to Dismiss Indictment [#55] be **DENIED**.

### V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED.**

SIGNED this 13th day of July, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

9