**FILED**

**AUG 14 2023**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | CASE NO. 5:22-CR-00367-OLG |
| | § | |
| JUAN CLAUDIO D'LUNA MÉNDEZ | § | |
| DEFENDANT | § | |

### AMENDED MOTION TO SUPPRESS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES JUAN CLAUDIO D'LUNA MÉNDEZ, defendant in the above-entitled and numbered cause, by and through undersigned counsel, and respectfully submits this Amended Motion to Suppress, and in support hereof, Defendant would show the Court the following:

### I. Facts.

Defendant has been able to assimilate a chronology of events on the day Defendant was arrested and his residence was searched. At issue is the propriety of the search warrant issued and executed. Defendant has obtained from law enforcement agencies numerous video recordings made by officers on June 27th, reports written about the events of June 27th, and the application for search warrant and the warrant issued on June 27th allowing officers to enter the residence. An investigator also has interviewed a witness who provided officers information on June 27 regarding a truck the witness saw near the tractor trailer that was discovered. The investigator who reviewed all of this material and interviewed the witness has signed a declaration which is attached to this Amended Motion. The investigator's declaration and the exhibits noted below collectively support the existence of the following facts:

On June 27, 2022, a tractor trailer containing numerous deceased persons was discovered on

the south side of Bexar County, Texas. The persons were migrants being smuggled through Texas from Mexico. The tractor's registration identified an individual (not Defendant Juan Claudio D'Luna Méndez) and an address: 131 Arnold Drive, San Antonio, Texas. Unbeknownst to the officers at the time, Defendant Juan Claudio D'Luna Méndez resided at the residence along with numerous other family members. A search warrant was ultimately secured later the same day, June 27, 2022, directing officers to search this residence, *see* Exhibit B.

All of the police videos and reports, including the report attached to the Government's Response to Motion to Suppress, indicate that two witnesses were interviewed at the scene. One witness gave information to officers concerning a truck; the other witness did not. Through videos and reports, Defendant has been able to identify the information given to officers prior to securing a search warrant to search the residence at 131 Arnold Drive, San Antonio, Texas.

At approximately 6:28pm on June 27th, one witness (identified here as "W-1") told officers that he had seen a grey-colored truck near a business in the general area of the tractor trailer that had been found full of migrants. See Exhibit C-1. Video recordings from a dash-cam on a police patrol vehicle at the scene show a dark-colored grey truck in the vicinity of the nearby business described by the witness., see Exhibit C-2, attached to this Amended Motion. Officer videos show employees arriving at the business. Witness W-1 told an officer that a grey-colored truck was present at the scene and described movements that the truck had made in terms of backing up, turning, etc. A dash-cam on an officer's vehicle corroborates the same movements of the pickup truck. In the video, it is apparent that workers from the business approach the dark grey truck and spoke with the driver. Ultimately, the truck leaves the location after an officer tells all employees near the business to leave. *See* Exhibit C-2.

At 7:14pm, officers checked the registration of the tractor and the trailer that contained the deceased migrants. The report indicated the following with respect to the tractor:

> Owner: Ernesto Alonso Leon
> Address: 131 Arnold, San Antonio, TX 78201
> Registered on October 21, 2021

The report indicated the following with respect to the trailer:

> Owner: ASK US ENERGY LLC
> Address: 4608 Sonoro Ave., McAllen, TX 78513
> Registered on February 6, 2014

The officers were not given nor otherwise did obtain any of the following information:

1. They did not have any information that a person named "Ernesto Alonso Leon" or anyone employed by ASK ENERGY LLC was involved in any criminal activity;

2. They did not have any information that the owner of either the tractor or trailer or the driver of the tractor resided at or ever visited the residence at 131 Arnold Dr., San Antonio, Texas;

3. They did not have any information that the registered owner of either the tractor or trailer was involved in the criminal activity.

The license registration information was shared with all officers.

At approximately 7:23pm, records indicate that officers arrive at the residence situated at 131 Arnold Dr, San Antonio, Texas to conduct surveillance. An officer on such surveillance subsequently radioed to other officers that he saw a silver Ford pickup parked at the location and the truck had the letters "FX4" displayed on it. Not stated by officers at the time, but nevertheless true, certain models of Ford trucks have "FX4" displayed on the rear portion of the sides of the truck adjacent to the tailgate.

Two persons who were believed to have relevant information were placed in two separate police vehicles in order to give a formal statement.[1] At 7:35pm, an officer not in uniform (identified

---

[1] *One of the witnesses is identified above as W-1. The video recordings indicate that the second witness did not have any information regarding the truck.*

here as the "plain clothed officer"), a detective and a uniformed officer wearing a body-cam device approach W-1 to interview him. All of this is on video. At approximately 7:38pm, W-1 tells the detective the following (see Exhibit C-3):

1. W-1 said he saw writing on the side of the truck. W-1 pointed out to the plain-clothed officer, the detective and the third officer that the writing was in large sized letters displayed on the side of the truck next to the rear passenger door on the driver side of the truck. It can be seen on the video that W-1 points to the location where the lettering was, by pointing to a spot near the passenger door of the truck, not near the tailgate.

2. At that same time, W-1 said he remembered the letter "F". The detective said, "'F' like the 'FX'?" W-1 did not make a specific acknowledgement in response to the question of whether it displayed "FX" but rather continued to say that after the "F" letter was the letter "R." The officer wearing the dash-cam then suggested again "FX" but again, W-1 did not acknowledge or confirm.

3. The plain-clothed officer asked whether the truck was similar to a "Raptor," and the witness said, "maybe."

4. W-1 said the person driving the truck was white skinned.

5. W-1 also told the officers that he saw the bed of the truck and noticed that there was nothing in the bed of the truck, that it was empty and open.

At approximately 7:40pm, surveillance officers see two Hispanic males exit the residence, enter the silver Ford truck parked in front of the residence and drive away. Uniformed officers who were not at the scene were given details of what road the silver truck was traveling on and were instructed to stop the truck on traffic. *See* Exhibit C-4. Dash-cam video from the marked police car indicates that the truck appeared to be traveling at a normal speed and not committing any traffic violation.

At approximately 7:41pm, a marked police car used his emergency lights to order the truck to stop. It stopped, and Defendant D'Luna Méndez, the driver, was ordered to exit the truck. *See* Exhibit C-5. The officer did not tell Mr. D'Luna Méndez why he was being stopped, but rather immediately locked his hands and arms in handcuffs. The officer told Mr. D'Luna Méndez at that moment that he is locking handcuffs on him because the truck smelled liked "weed." It is clear from Texas state case law that an officer can no longer use the smell of "weed" as justification for arrest, seizure or search given that other substances that are not illegal have the same odor.

Officers ultimately took photographs of the truck. The photographs make evident the following:

1. The truck is silver in color.
2. The letters "FX4" are affixed to the side of truck, but next to the tailgate, not near the passenger door where W-1 had earlier pointed to the officers. *See* Photographs of the side of the truck, attached to this Amended Motion as Exhibit A-1 and Exhibit A-2.
3. W-1 did not tell officers that he saw any other word or letter on the truck other than "F" and "R" near the rear passenger door, away from the area near the tailgate.
4. A photograph taken by officers shows a large brightly-colored orange toolbox extending over the top of and across the width of the bed of the truck, and adjacent to the backside of the cab of the truck. *See* Photographs A-3 and A-4, attached to this Amended Motion.
5. The photographs also clearly show that the bed of the truck is full of construction equipment, with such equipment extending higher than the edge of the bed and visible by someone looking at the the side and rear of the truck.

The bed clearly is not empty, contra to what was described by the witness to the officers when describing the truck he saw. *See* Photographs A-3 through A-6, attached to this Amended Motion.

At 7:46pm, W-1 told officers that he remembered that the lettering on the truck read, "Flasher." The officer confirmed by asking the witness if he understood correctly by repeating, "Flasher," and the witness confirmed by saying, "yes." See Exhibit C-6.

At this point, officers have acquired the following information:

1. W-1 did not know what make the truck was that he saw in the general vicinity of the tractor trailer, but said it could be a Toyota Raptor;
2. W-1 said the truck was grey in color;
3. W-1 pointed to a truck that officers had approached and then instructed to leave, which was a truck that the video shows is clearly dark grey in color, not similar to silver;
4. W-1 said the truck had large lettering on the side of the truck near the passenger door, and pointed to an area on the side of the truck where he saw the lettering displayed, which was not an area near the rear of the truck adjacent to the tailgate;
5. W-1 did not affirm that the letter was "FX4" either of the two times suggested by two different officers;
6. W-1 said the lettering spelled out the word, "Flasher";
7. W-1 said he saw the bed of the truck, and he saw that it was empty and open;
8. No witness said that an orance-colored toolbox or construction equipment was clearly displayed in the bed of the truck; indeed, the opposite was told to the officers;

9. The truck seen at the residence at 131 Arnold was silver in color, not dark grey;

10. The truck seen at the residence was a Ford;

11. The truck seen at the residence had "FX4" adjacent to the tailgate, not near the passenger door;

12. The truck seen at the residence did not have "Flasher" or any other similar word printed on the side;

13. The truck seen at the residence had a brightly-orange-colored, large toolbox extending over the top of the bed;

14. The truck seen at the residence was full of construction equipment with a ladder and other construction equipment extending above and over the sides of the bed;

15. The truck seen at the residence was not registered to Ernesto Alonso Leon or ASK US ENERGY, LLC.

At approximately 9:07pm, a police officer submitted an affidavit for search warrant to a part-time San Antonio Municipal Court Judge. The officer swore that the statements in the affidavit were true, and a search warrant was issued at 9:07pm, June 27, 2022, for the residence at 131 Arnold. A copy of the search warrant and affidavit in support are attached to this Amended Motion as Exhibit B.

The affidavit contains the following assertions:

1. There is in Bexar County, Texas, a "suspected place" . . . located at 131 Arnold Dr., San Antonio, Tx.

2. "There is in this suspected place items constituting evidence that the offense of Smuggling of Persons" has been committed. Items of "evidence" are listed.

3. Officers responded to a scene where bodies of several deceased persons were located inside a tractor trailer.

4. "A witness reported seeing a silver Ford truck with 'FX4' leaving the scene."

5. "Based on information returned from the license plate, the tractor trailer showed to have recently registered to the house at 131 Arnold Dr., San Antonio, Texas 78213."

6. "SAPD personnel went to the house at 131 Arnold Dr. and saw a silver Ford truck with "FX4" on it at the location. The truck matched the description of the truck seen leaving the scene on Quintana Rd."

7. "Two males were seen exiting the house at 131 Arnold Dr. and they got into the silver Ford truck and left the location. That truck was later stopped and the occupants were detained."

8. "It is believed the occupants of the truck are involved in the offense of Smuggling of Persons and the house at 131 Arnold Dr. may contain evidence related to the offense of Smuggling of Persons."

9. "Your affiant believes a search of the above-described suspected place for the described item(s) will constitute evidence that the offense of Smuggling of Persons was committed on or about June 27th, 2022, in Bexar County, Texas."

10. "Your affiant believes that the specific offense of Smuggling of Persons has been committed and that the item(s) described above, constituting evidence to be searched for and seized, are located in the suspected place."

Upon execution of the warrant, law enforcement officers discovered several firearms located throughout the residence, including the firearms identified in Count Two of the Indictment filed in the instant case, the only count charged against Mr. Juan Claudio D'Luna Méndez. *See* Docket No. 14.

There is no evidence that the weapons were connected to the tractor trailer incident that the officers were investigating that occurred on June 27, 2022, nor has the government asserted otherwise. Defendant D'Luna Méndez is charged with violating 18 U.S.C. § 922(g)(5) for possessing a firearm while being an alien who is illegally or unlawfully in the United States. *Id.*

## II. Legal Argument.

The firearms seized from the residence at 131 Arnold Drive should be suppressed, as they were unlawfully seized in violation of the Fourth Amendment to the United States Constitution. There are several legally distinct bases for suppression: (1) The affidavit in support of the warrant contains a false statement; (2) the affidavit in support of the warrant omits material information; (3) the affidavit containing conclusory statements is a bare bones affidavit that lacks sufficient facts to establish probable cause that evidence would be found in the residence. The good-faith exception to the exclusionary rule does not apply to the instant warrant, as the warrant not only lacked sufficient probable cause but (1) was obtained based upon false statements or statements made in reckless disregard of the truth, and (2) omitted material information. Moreover, even if the false statement was excised from the affidavit and/or the omitted information was included in the affidavit, the affidavit would not be sufficient to establish probable cause and there is no rational basis to conclude that the magistrate would have issued the warrant.

### A. False Statements and Omissions of Material Facts.

In the case at bar, the affidavit contained a sentence that contained two patently false statements contained within one sentence: *"A witness reported seeing a silver Ford truck with 'FX4' leaving the scene."* Statements made at the scene by witnesses do not sustain this assertion. Instead, officers conformed what actually was told to them after discovering parked at the residence the presence of a silver truck with "FX4" printed on the side. The witness describing to officers a truck that was seen

at the location indicated that it was grey, not silver. The witnesses pointed out a dark grey-colored truck at the scene.

Additionally, there are glaring material omissions from the affidavit:

1. The witness who saw the grey truck leaving the scene said that there was "nothing" in the bed of the truck and that the bed was "open." The truck seen at the residence from which Mr. D'Luna Méndez was seen leaving unmistakably had a clearly-visible, obtuse-looking brightly-colored orange tool box on the bed (something a witness would clearly see and describe) and the bed of the truck was full of construction equipment extending above and over the edge of the bed that was clearly visible above the edge of the truck. In other words, the vehicle seen at the residence clearly did *not* match the description of the truck described by the witness. This inconsistency between what was told to the officers and what was seen by officers was omitted from the affidavit.

2. The witness did not say the truck had "FX4" written on it. On the contrary, when the witness was asked by two different officers whether it had "FX4", the witness was silent and did not respond. Notably, the two officers who volunteered to the witness that it could be "FX4" did so approximately fifteen minutes after other officers having set up surveillance at the residence, seeing the silver Ford truck parked and displaying "FX4" near the tailgate. The affiant failed to include such information in the affidavit.

3. The witness told the officers that he saw the word "Flasher" on the side of the truck. The absence of this word on the silver truck seen at the residence is absent from the affidavit.

These facts would lead an objective to magistrate judge to conclude that there is not probable cause to believe the truck seen at the residence is the same truck seen by the witnesses. Thus, the omission of these material facts affected the entire legitimacy of the probable cause analysis. Plus, not only were these facts omitted from the affidavit, the affidavit was written in such a way so as to rest

on the fictitious assertion that the truck seen at the residence was probably the same truck described by the witness.

The U.S. Supreme Court has held that "a search warrant must be voided if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement made intentionally or with reckless disregard for the truth is insufficient to establish probable cause." *United States v. Glenn*, 935 F.3d 313, 321 (5th Cir. 2019), citing *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017) & *Franks v. Delaware*, 438 U.S. 154, 155-65 (1978). The same is true as to the omission of a material fact. *See United States v. Cronan*, 937 F.2d 163, 165 (5th Cir. 1991) (omission of facts "clearly critical to a finding of probable cause" was sufficient to find that officer "acted, at a minimum, with reckless disregard for the truth"). "Reckless disregard" in this context is established if the affiant recognizes the risk of making an affidavit misleading by including or omitting particular facts. *See, e.g., United States v. Pulley*, 987 F.3d 370, 377 (4th Cir. 2021). That is, the importance of a particular fact to establishing probable cause is an important factor to consider in evaluating whether there was intentional or reckless falsity and/or omission.

As an offer of proof, Defendant subpoenaed all agencies participating in the investigation on the day in question and received from SAPD and SAFD/EMS all recordings of officer contact with witnesses at the scene and other activity performed by officers on the afternoon of the incident. Also, attached to this motion is a sworn declaration from an investigator who has reviewed the recordings and can vouch for facts presented here, *see* Exhibit D. The recordings verify that the witness being interviewed at the scene of the tractor trailer was unequivocal that the truck he saw was grey and had the word "Flasher" printed on the side, and the printing was near the passenger door of the truck, not at the rear adjacent to the tailgate. When his memory was tested for more detail by officers who

suggested to him information that officers working with them had seen, the witness resisted the temptation to concur with the officers' suggestions.

Officers surveilling the residence observed a vehicle that did not match the description of the vehicle reported by the witnesses. Instead, they observed a silver truck with "FX4" printed adjacent to the tailgate, not the passenger door. Importantly, two officers interviewing the witness asked at different times whether what he saw was "FX4," yet each time the witness did not affirm the suggestion, but rather continued describing the truck in a different way. The witness then gave additional facts which were inconsistent with what officers at the residence were observing, by pointing to the passenger door location and said large-sized letters printed the word "Flasher." Yet, this was not included in the affidavit.

The witness never said or affirmed that he saw a "silver" truck or that it had "FX4" on it. In fact, his marked silence in response to two different officers at two different times suggesting an answer spoke volumes. Yet, the officers failed to provide this material information to the magistrate judge and instead created a false scenario that didn't exist.

Similarly, the recordings establish that the witness unequivocally told officers that there was "nothing" in the bed of the truck he saw and that it was "open." This is clearly not what surveillance officers saw as to the truck parked in front of the residence that Defendant eventually drove away. Defendant's truck had a brightly-colored orange toolbox and construction equipment that filled the truck bed and extended above the sides. Inclusion of this information in the search warrant information would surely have led the magistrate to conclude that the truck seen in front of the residence was not the same truck seen by the witness at the scene of the tractor trailer.

### B. Good-Faith Exception Does Not Apply.

"In general, 'an officer may rely in good faith on the validity of a warrant so long as the warrant is supported by more than a bare bones affidavit.'" *See United States v. Cherna*, 184 F.3d 403, 409 (5th

Cir. 1999). If an affidavit is "wholly conclusory" and "does not detail any facts" but instead alleges only conclusions, the affidavit is not sustainable on good faith. *United States v. Robinson*, No. 22-30269, 2023 U.S. App. LEXIS 2695 *3 (5th Cir. Feb. 2, 2023), citing *United States v. Morton*, 46 F.4th 331, 337 (5th Cir. 2022). "Examples of 'bare bones' affidavits" are where the affiant states he "has cause to suspect and does believe" or "has received reliable information from a credible person and does believe" that contraband is located in the premises. *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006). Another example is where an officer listed the defendant's "biographical and contact information," and then stated, "nothing more than the charged offense, accompanied by a conclusory statement that the defendant committed the crime." *United States v. Morton*, 46 F.4th 331, 337 (5th Cir. 2022), citing, *Spencer v. Staton*, 489 F./3d 658, 661-62 (5th Cir. 2007), *withdrawn in part on reh'g* (July 26, 2007). Where there is no nexus between the house to be searched and the evidence sought, however, the affidavit will be found insufficient. *United States v. Nguyen*, 172 Fed. App'x 558, 561 (5th Cir. 2006). The salient facts included in the affidavit in the instant case rested on a false statement and conclusory generalizations.

      Often, affiants seek to bolster their affidavits by including generalizations that it is "normal" or "typical" for a certain type of criminal to keep evidence and contraband in their residence. This type of generalization is not contained within the affidavit at bar in the instant case, but the inference is there. That is, the affiant's language necessarily inferred that because a "silver Ford truck" is parked in front of the residence, then there must be evidence inside. The Fifth Circuit has been careful to note that a generalization that there "must be" evidence inside a residence is only sufficient if more facts are given to render a conclusion that the officer's reliance on the affidavit was objectively reasonable. *See, e.g., United States v. Broussard,* 80 F.3d 1025, 1034-35 (5th Cir. 1996) ("We do not mean to suggest that these types of generalizations, **_without more_**, are sufficient to render the officer's reliance objectively reasonable."); *United States v. Payne,* 341 F.3d 393, 400 (5th Cir. 2003) ("While the

*__generalization alone might be insufficient__* to render official reliance reasonable, other facts in the affidavit taken together with generalizations founded upon training and experience could support reasonable reliance."). Yet, where there are no specific facts that provide a nexus between the suspected crime and the interior of the house, the "good-faith" exception cannot save the flawed affidavit despite the presence of this type of generalization. *See, e.g., United States v. Solorio-Hernandez*, No. 5:15-CR-156-3, 2015 U.S. Dist. LEXIS 72904 **14-15 (S.D. Tex. June 5, 2015) (motion to suppress granted where no reasonable agent could rely on warrant where affidavit was "bare bones" with respect to nexus between objects sought and place to be searched). "[T]he fact that there is probable cause to be a person has committed a crime does not automatically give the police probable cause to search his house for evidence of that crime." *See United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982). "If that were so, there would be no reason to distinguish search warrants from arrest warrants." *Id.*

A comparison of the generalization in the affidavit addressed in *Robinson* and the affidavit in the instant case demonstrates the conclusory nature of the affidavit at issue:

| *Robinson* Affidavit | Affidavit in Instant Case |
|---|---|
| Resident known to be a "well known drug dealer" | Officers did not have any knowledge regarding residents. |
| Informant saw high volume of people entering/exiting at 5 min. intervals, a characteristic of selling drugs | Officers did not observe any unusual aspect of the residence. |
| Person stopped on traffic after leaving residence possessed heroin. | Defendant stopped on traffic was not found to have any evidence or contraband that related to any crime, much less "smuggling of persons." |
| Search of person driving the vehicle revealed additional crime-related material. | Search of Defendant did not reveal anything. |

Analyzing applicable law to the instant case, it is evident that there exists no specific factual nexus between the suspected crime and the place to be searched. Notably, this is the case *__even if the false statement is not excised from the affidavit.__* The following are the facts included in the affidavit:

| *Affidavit Facts* | *Legal Principle* |
|---|---|
| There is in Bexar County, Texas, a "suspected place" . . . located at 131 Arnold Dr., San Antonio, Tx. | Conclusory statement offering no facts of nexus of crime to interior of residence. |
| "There is in this suspected place items constituting evidence that the offense of Smuggling of Persons" has been committed. Items of "evidence" are listed. | Conclusory generalization |
| Officers responded to scene where bodies of several deceased persons were located inside a tractor trailer. | Offers no facts to support nexus between crime and residence. |
| A witness reported seeing "a silver Ford truck with 'FX4' leaving the scene." | **False statement** - - <br>(1) witness did not say he saw a silver truck;<br>(2) witness did not say he saw "FX4" on the truck.<br><br>**Omission of Material Fact** - - **Affiant omits fact that witness said truck bed was empty and open, whereas truck seen at residence had (1) an bright-orange-colored large tool box on top of the bed, and (2) was full of construction equipment extending over the sides of the bed.** |
| "Based on information returned from the license plate, the tractor trailer showed to have recently registered to the house at 131 Arnold Dr., San Antonio, Texas 78213." | Conclusory statement; no facts support nexus between crime and interior of residence.<br><br>Moreover, the sentence is factually incorrect, in that the trailer that housed the migrants is not registered to 131 Arnold. Only the tractor attached to the trailer is registered to 131 Arnold.<br><br>Also, the tractor was registered in October 2021, eight months prior to discovery of migrants and tractor. |
| SAPD personnel went to the house at 131 Arnold Dr. and saw a silver Ford truck with "FX4" on it at the location. *The truck matched the description of the truck seen leaving the scene on Quintana Rd.* | **False statement** - - witness did not say he saw a silver truck, nor did he say he saw "FX4" on the side of the truck. |

| **_Affidavit Facts_** | **_Legal Principle_** |
|---|---|
| "Two males were seen exiting the house at 131 Arnold Dr. and they got into the silver Ford truck and left the location. That truck was later stopped and the occupants were detained." | Conclusory statement void of factual nexus of criminal activity to interior of residence.<br><br>No indication two men were committing any crime.<br><br>No indication men matched description of any suspect.<br><br>Omission of fact that no person matching name on tractor registration was found in vehicle. |
| "It is believed the occupants of the truck are involved in the offense of Smuggling of Persons and the house at 131 Arnold Dr. may contain evidence related to the offense of Smuggling of Persons." | Conclusory generalization. |
| "Your affiant believes a search of the above-described suspected place for the described item(s) will constitute evidence that the offense of Smuggling of Persons was committed on or about June 27th, 2022, in Bexar County, Texas." | Conclusory generalization |
| "Your affiant believes that the specific offense of Smuggling of Persons has been committed and that the item(s) described above, constituting evidence to be searched for and seized, are located in the suspected place." | Conclusory generalization. |

Excising the two patently false statements that (a) a witness saw "a silver truck" leave the scene of the crime, and (b) the witness saw that the truck had "FX4" on the side, the affiant's truthful statements consist of:

1. A fact: *Bodies of deceased persons were found in and adjacent to a tractor trailer;*

2. A fact: *The tractor was "recently registered" to 131 Arnold Dr., San Antonio;*

3. A conclusory generalization: *The officer "believes" that occupants of the house have committed the offense of "Smuggling of Persons."*

4. A conclusory generalization: *The officer "believes" that evidence will be found inside the residence.*

These two facts plus two generalizations are wholly insufficient to support a finding that the officer's reliance was objectively reasonable. They provide no factual support to establish a nexus between the crime and the interior of the residence.

A court's first determination in considering the propriety of a search warrant is whether the "good-faith exception to the exclusionary rule established in *Leon* applies. *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999), citing *United States v. Leon*, 468 U.S. 897, 922 (1984). If the good-faith exception applies, the court need not reach the issue of probable cause. However, there are two exceptions to that rule: If the evidence indicates that the issuing magistrate was "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," the good-faith exception does not apply. *Id.* Similarly, if the affidavit is so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable, the good-faith exception does not apply. *Id.* at 407-08. Both of these exceptions exist in the instant case. The warrant at issue cannot be saved by the good-faith exception because (1) the affidavit contains a false statement; (2) the affidavit omitted material information that negated the probability that a suspected truck was parked at the residence; (3) there are no other facts to support a finding of probable cause that evidence would exist inside the residence, as all that is left are conclusory statements.

Finally, important for purposes of analyzing the propriety of the warrant in the instant case, "the scope of a warrant may influence whether it is bare bones." *United States v. Morton*, 46 F.4th 331, 339 (5th Cir. 2022). "An affidavit that is not bare bones for a limited search could be bare when supporting a broader search." *Id.* In the instant case, the items to be searched for were as broad as the

imagination can take it, and yet, the facts in the affidavit paled in meaningful, applicable facts pointing to probable cause that such items would be found inside the residence.

**WHEREFORE, PREMISES CONSIDERED,** Defendant respectfully prays that this Honorable Court will grant this Motion to Suppress and order that all items seized from the inside the searched residence not be admitted into evidence in this cause, and for such other and further relief as this Court may deem appropriate.

Respectfully submitted,

/s/ Michael McCrum
MCCRUM LAW OFFICE
845 Proton Road
San Antonio, TX 78258
P: (210) 225-2285 | F: (210) 225-7045
michael@mccrumlegal.com
**COUNSEL FOR DEFENDANT JUAN CLAUDIO D'LUNA MÉNDEZ**

Certificate of Service

I hereby certify that a copy of the above and foregoing document has been filed electronically on this the 14th day of August 2023 and a copy sent to the United States Attorney's Office, and all other counsel through the court's electronic filing system.

/s/ Michael McCrum
Michael McCrum

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| PLAINTIFF | § | |
| | § | |
| v. | § | CASE NO. 5:22-CR-00367-OLG |
| | § | |
| JUAN CLAUDIO D'LUNA MÉNDEZ | § | |
| DEFENDANT | § | |

## ORDER

ON THIS DAY, came on to be considered Defendant D'Luna Méndez's Motion to Suppress.

The Court finds that Defendant D'Luna Méndez's motion is well-founded and should be GRANTED.

Accordingly,

IT IS HEREBY ORDERED that the Defendant's Motion to Suppress is hereby GRANTED.

SIGNED AND ENTERED on this the _____ day of _____ 2023.

_____
ORLANDO GARCÍA
UNITED STATES DISTRICT JUDGE