UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| United States of America,<br>    Plaintiff,<br><br>v.<br><br>Juan Claudio D'Luna-Mendez (2),<br>    Defendant. | No. SA: 22-CR-00367-OLG |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S AMENDED MOTION TO SUPPRESS

This case stems from the tragic deaths of 53 aliens trapped inside a tractor registered to Defendant Juan Claudio D'Luna-Mendez's residence. After state officers obtained a warrant to search the residence, they found multiple firearms inside D'Luna-Mendez's bedroom and charged him with illegal firearms possession. D'Luna-Mendez has now filed a motion to suppress all evidence obtained from the search alleging that the warrant was not supported by probable cause and was obtained based on false statements and material omissions. ECF No. 101. The motion should be denied. The search warrant was supported by probable cause and the state officers executed it in good faith. D'Luna-Mendez has not come close to meeting his burden to show that he is entitled to an evidentiary hearing on his *Franks* claim, much less that he is entitled to relief on any claim.

## DISCUSSION

On the evening of June 27, 2022, dozens of HSI agents, San Antonio Police Department officers, and U.S. Customs and Border Protections agents responded to a human-trafficking incident involving a tractor trailer near Quintana Road in San Antonio. Officers discovered mass

1

casualties in the truck and in the immediate surrounding area. The area is desolate and remote but with quick access to two highways, including IH-35, a major alien-smuggling corridor.

While on scene and at approximately 6:28 p.m., SAPD Officer Jose Trevino identified a civilian witness, C.M., and placed him in his patrol vehicle so that C.M. could be interviewed by SAPD Detectives. *See* Defense Exhibit C-1 (Officer Jose Trevino's Body Cam), Gov. Exhibit 1 (Certification of Transcription and Translation) & Gov. Exhibit 1-A (Certified Spanish to English Translation of Officer Jose Trevino's Body Cam).

At approximately 7:38 p.m., SAPD Detectives Matthew Robles and Raul Juarez, using Officer Chad Nelson's body cam, spoke with C.M., who described seeing a gray Ford "FX4" driving down Quintana Road, close in time to the critical incident. *See* Defense Exhibit C-3 & Gov. Exhibit 1-B (Certified Spanish to English translation of Officer Chad Nelson's Body Cam). Detective Robles' report documents this encounter. In his report, Robles notes a "silver" and not "gray" Ford "FX4". *See* Gov. Ex. 2 (Detective Robles Report). Simultaneously, officers discovered the tractor was registered to a residence at 131 Arnold Drive in San Antonio. *Id*.

In response, state officers set up surveillance at 131 Arnold Drive. SAPD officers witnessed a truck at the residence matching the description of the truck seen leaving the scene on Quintana Road. After several minutes, two males exited the house at 131 Arnold Drive, entered the truck, and then departed the residence. At approximately 7:42 p.m., officers performed a traffic stop and the driver, D'Luna-Mendez, was detained.

At approximately the same time and while on scene at Quintana Road, Officer Alejandro Villafranco assisted with removing civilian witnesses from the crime scene. During this time, Officer Villafranco spoke to C.M. *See* Defense Exhibit C-6 & Gov. 1-C (Certified Spanish to English translation of Officer Alejandro Villafranco's Body Cam).

In response to the traffic stop of D'Luna-Mendez, SAPD Detective Joe Rios, who was on scene at 131 Arnold and had assisted with the traffic stop of D'Luna-Mendez, called Detective Mark Corn, and requested a state search warrant for the residence with the information he was provided by Detective Rios. Detective Corn, who was at the SAPD office and not on scene, obtained a state search warrant for the residence. *See* Gov. Ex. 3 (131 Arnold Drive Search Warrant). In the affidavit, Detective Corn wrote that officers had recently responded to the 9600 block of Quintana Road, "where bodies of several deceased persons were located inside a tractor trailer." *Id*. at 1. He further stated that "a witness reported seeing a silver Ford truck with 'FX4' leaving the scene." *Id.* He avowed that based on the information from the license plate, the tractor trailer was recently registered to the house at 131 Arnold Drive. *Id.* He wrote that SAPD personnel went to the house and saw a silver Ford truck with "FX4" on it at the location. *Id.* The truck matched the description of the truck seen leaving the scene on Quintana Road. *Id.* The detective stated that the offense of alien smuggling had been committed and that he believed evidence of the crime would be found inside the home. *Id.* at 1–2.

Assessing those facts, a magistrate judge in Bexar County found probable cause and executed a search warrant authorizing the officers to search the residence for evidence including firearms. *Id.* at 4. Upon execution of the warrant, investigators located a rifle and two handguns in D'Luna-Mendez's bedroom.

D'Luna-Mendez admitted he had possessed the firearms. He further admitted he was a citizen of Mexico without permission to enter the United States. Federal immigration officials confirmed that D'Luna-Mendez is a citizen and national of Mexico, residing illegally in the United States. D'Luna-Mendez and his co-defendant/father, Juan Francisco D'Luna-Bilbao, were charged with possessing firearms as illegal aliens in violation of 18 U.S.C. § 922(g)(5). ECF No. 14.

D'Luna-Mendez now seeks to suppress evidence obtained from the search under the Fourth Amendment arguing that "[t]he warrant lacked sufficient information to establish probable cause to believe that contraband or evidence was present inside the residence." ECF No. 101. He further argues that the good-faith exception does not apply as the warrant not only lacked sufficient probable cause but was obtained based upon false statements or statements made in reckless disregard of the truth." *Id.*

## ARGUMENT

The Court should deny D'Luna-Mendez's suppression motion on two independent grounds. First, evidence obtained from the search should not be suppressed because law-enforcement officers obtained a search warrant and relied on it in objectively reasonable good faith. D'Luna-Mendez has failed to meet his burden to show that the officers' reliance on the warrant was unreasonable. Alternatively, the warrant was supported by probable cause.

### I.     The Good-Faith Exception Applies.

First, the Court should deny D'Luna-Mendez's motion because officers relied on the search warrant in good faith. The Fourth Amendment generally requires a warrant to search a home. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The warrant must be based "upon probable cause, supported by oath or affirmation." *United States v. Aguirre*, 664 F.3d 606, 613 (5th Cir. 2011). But after law-enforcement officers obtain a search warrant, evidence should not be suppressed when they rely on it in objectively reasonable good faith. *See United States v. Leon*, 468 U.S. 897, 908 (1984). Under this "good-faith exception" to the exclusionary rule, "[s]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness." *Leon*, 468 U.S. at 922 (cleaned up). Rather, the issuance of a warrant "normally suffices to establish that a law enforcement officer has acted in good faith in conducting a search." *Id.* (cleaned up).

There are a few narrow exceptions to this general principle. *Leon*, 468 U.S. at 923. For example, reliance is unreasonable when the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew or recklessly disregarded was false. *Id.* (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). Reliance on a warrant is also unreasonable when the warrant is based on an affidavit so lacking in probable cause as to render belief in its existence unreasonable. *Id.* at 923 & n.23. This exception to the exception involves so-called "bare bones" affidavits. *United States v. Morton*, 46 F.4th 331, 336 (5th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 2467 (2023).

In his motion, D'Luna-Meza claims that the officers who searched his home pursuant to the warrant did not act in good faith because the warrant contained a false statement or omitted material information. He further claims that reliance on the warrant was unreasonable because the affidavit was bare bones. Both claims are meritless.

### 1. D'Luna-Mendez has not shown that SAPD Detective Corn knowingly or recklessly supplied any material false statements or omissions in his affidavit.

D'Luna-Mendez first alleges that the good-faith exception does not apply because Detective Corn wrote false statements and omitted material facts in his affidavit. His claim should be rejected because the affidavit did not contain any materially false information and, even if it did, there is no evidence that Detective Corn intentionally or recklessly provided any false statements or omissions.

First, D'Luna-Mendez has failed to show that the affidavit contains any materially false information. He argues that there were three false statements in Detective Corn's affidavit. Those false statements were (1) the color of the truck leaving Quintana Road was silver, (2) that the truck leaving Quintana Road had "FX4" written on it, and (3) the tractor trailer was registered to 131

5

Arnold Drive. The first two statements are not demonstrably false. Civilian witness C.M. told SAPD Detectives Raul Juarez and Mark Robles that he saw a "gray truck [omitted]…a four (4) door" leave Quintana Road. Gov. Exhibit 1-B at 1, line 1. (Certified Spanish to English translation of Officer Chad Nelson's body cam). Detective Corn's affidavit states that a "silver" truck, not "gray" truck, left Quintana Road. This is not a materially false statement. The colors gray and silver are often used interchangeably, much like the colors maroon and red or purple and fuchsia or turquoise and blue. Arguable, the color silver is the color gray but with a metallic or polished tone. The visual sensation is almost identical. The description of a truck as "gray" or "silver" is not materially different, as evidenced by Detective Robles documenting in his report that C.M. stated he saw a "silver" truck leave Quintana Road. Gov. Exhibit 2 at 1 (Detective Robles Report).

The second allegation is that C.M. did not state that a truck leaving Quintana Road had "FX4" written on it, despite Detective Corn's affidavit stating that it did. D'Luna-Mendez's claim is not supported by the facts. When Detective Juarez asked C.M. about the truck, C.M. stated that "the truck was a…a *F of four (4) like, like*…" Gov. Exhibit 1-B, page 1, line 11 (Certified Spanish to English translation of Officer Chad Nelson's body cam) (*emphasis* added). C.M. went on to explain the lettering on the truck and stated there "was a four (4)." *Id*. at lines 14-19. When Detective Juarez asked C.M. if the lettering included a FX, C.M. first stated that the lettering included a "R" but when asked again if the truck was a "FX Custom," C.M. affirmed by saying "that one uh…" and then said the truck looked like a "Raptor." *Id*. at page 2, lines 6-18. Contrary to D'Luna-Mendez's argument, a Raptor is a Ford model. C.M. confirmed that he saw a Ford when he spoke to Officer Alejandro Villafranco. Gov. Exhibit 1-C, page 3, lines 31-33 (Certified Spanish to English translation of Alejandro Villafranco's body cam). In summary, C.M. told Officers that the truck leaving Quintana Road was a Ford and had the letter "F" and the number "4" on it, and,

6

when asked a second time if the truck was a "FX Custom," he confirmed his earlier statement by saying "that one."

D'Luna-Mendez also argues that there were two material omissions from Detective Corn's affidavit. It is true that the intentional or reckless omission of material facts from an affidavit may render good-faith belief in its validity unreasonable. *See Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006). But D'Luna-Mendez has failed to show the omission of material facts in the affidavit, much less ones that were intentionally or recklessly omitted. For example, he claims that officers falsely omitted C.M.'s statement that there was "nothing" in the bed of the truck and that the bed was "open." ECF No. 101 at 10. But C.M. never made any such statement. When asked if the truck had anything in the back, C.M. replied that "it was uncovered." Gov. Exhibit 1-B, page 1, line 11 (Certified Spanish to English translation of Officer Chad Nelson's body cam). Nowhere in any of C.M.'s three interviews does he state that there was nothing in the bed of the truck. His claim that the bed was "uncovered," simply meant there was no truck bed cover. Notably, trucks typically come with open beds that can fit tall items but leave objects exposed to the elements. With a truck bed cover, one can keep the bed of the truck covered. Here, C.M. stated the bed was uncovered, which matched the description of the truck at the Arnold Drive house, which did not have a bed cover.

D-Luna-Mendez's second allegation of a "material" omission is equally meritless. D'Luna-Mendez claims that the affidavit omitted C.M.'s statement that the word "Flasher" was written on the side of the truck. While C.M. made this statement, Gov. Exhibit 1-C, page 3, lines 31 & 43 (Certified Spanish to English translation of Alejandro Villafranco's body cam), it was immaterial to finding probable cause because the affidavit already included the color and model of the truck that left the scene, which matched the color and model of the truck at 131 Arnold Drive.

7

In any event, even if D'Luna-Mendez made a more compelling case that the affidavit contained materially false information, there is no evidence that Detective Corn intentionally or recklessly provided false information to the magistrate. The good-faith "exception does not apply when the magistrate or judge in issuing a warrant was misled by information in an affidavit that *the affiant* knew was false or would have known was false except for his reckless disregard of the truth." [1] *Blevins*, 755 F.3d at 324 (quoting *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999)) (emphasis added); *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). In other words, the inclusion of a false statement in the warrant does not by itself warrant suppression; instead, the affiant must have made the false statement intentionally or with reckless disregard for the truth. *See United States v. Ortega*, 854 F.3d 818, 827 (5th Cir. 2017). For this reason, the Court looks to the statements and intent of the affiant himself, not of any other source of information. *See United States v. Wake*, 948 F.2d 1422, 1429 (5th Cir. 1991). Notably, it is often "difficult for an accused to prove that omission was made intentionally or with reckless disregard rather than negligently unless he has somehow gained independent evidence that the affiant had acted from bad motive or recklessly in conducting his investigation and making the affidavit." *United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).

For instance, in *Wake*, a DEA agent obtained a search warrant for an office based in part on statements made by the office manager that were relayed to the DEA agent by a different police officer. *Id*. at 1425. Wake later challenged the validity of the search warrant after trial testimony revealed that the affidavit incorrectly stated that the manager had given the police officer information on previous occasions. *Id*. at 1427-28. But the Fifth Circuit rejected Wake's *Franks*

---

[1] D'Luna Mendez also argues that the warrant had a "bare-bones" affidavit and was "so facially deficient" that it could not be presumed valid. *See Gibbs*, 421 F.3d at 358. The Government addresses those arguments later.

challenge, emphasizing that "the person whose deliberate falsehood or reckless disregard for the truth" was at issue was the affiant, not the police officer whose statements the affiant had relied upon. *Id*. at 1429. Thus, although Wake had elicited testimony at trial that contradicted a statement in the affidavit, the Fifth Circuit declined to invalidate the warrant because Wake failed to show that the *affiant* "submitted the affidavit knowing of the false statements or with reckless disregard for their truth." *Id*.

So too here. Although D'Luna-Mendez repeatedly references alleged discrepancies between the statements in Detective Corn's affidavit and the footage from SAPD officers' body camera videos, he has made no showing that Detective Corn deliberately made any false statements or that he recklessly disregarded the truth. D'Luna-Mendez has failed to show that Detective Corn knew about or had any reason to be aware of any discrepancies between the body camera footage when he prepared the affidavit. Detective Corn had no way of knowing the precise statements that were made. He was not on scene and only inputted into the affidavit what he was told by Detective Rios, as he has done before in the other investigations. He had not reviewed the body camera footage when he prepared the affidavit because he only inputted what Detective Joe Rios told him, who was on scene at the house on Arnold Drive. Simply put, D'Luna-Mendez cannot show that Detective Corn submitted his affidavit "knowing of [any] false statements or with reckless disregard for their truth." *Id*. Absent that, his *Franks* challenge to the arrest warrant affidavit fails. *See Id*.; *See also United States v. Ivy*, 973 F.2d 1184, 1188 (5th Cir. 1992) (holding there was no clear error when the district court determined the affiant had "no reason to believe" a statement in the affidavit was false).[2]

---

[2] As such, Defendant is also not entitled to a *Franks* hearing as he has not made a "substantial preliminary showing" that Detective Corn made a false statement knowingly or with reckless disregard for the truth. *See United States v. Minor*, 831 F.3d 601, 604 (5th Cir. 2016) (declining to

Because D'Luna-Mendez has not shown that Detective Corn deliberately or recklessly misled the magistrate judge and has not otherwise shown that the officers had "no reasonable grounds for believing that the warrant was properly issued," the good-faith exception applies. The SAPD Officers here did not engage in any misconduct, so excluding the evidence obtained after D'Luna-Mendez's residence would not "further the ends of the exclusionary rule in any appreciable way." *Gibbs*, 421 F.3d at 357 (quoting *Leon*, 468 U.S. at 919-20).

Finally, even if the Court concludes that any statement or omissions included in the search warrant affidavit were materially false, the search warrant is still valid. *Franks* requires the Court to determine whether, excluding such errors and omissions, the remaining "corrected affidavit" establishes probable cause for the warrant's issuance. *Terwilliger v. Reyna*, 4 F.4th 270, 283 (5th Cir. 2021). Even absent the disputed statements, the affidavit sufficiently established probable cause to search the residence of 131 Arnold Drive. "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983). To support a finding of probable cause, the affidavit must establish a probability that (1) the offense of alien smuggling had probably occurred and (2) evidence of that crime was probably located at 131 Arnold Drive. Although D'Luna-Mendez points to a litany of statements from the affidavit that he claims are false, almost all of them can be reasonably read to describe the events as they occurred. *See Ortega*, 854 F.3d at 826 (observing that statements that can reasonably be read as truthful are not false under *Franks*).

Given, D'Luna-Mendez's allegation that Detective Corn's affidavit states the "tractor trailer" was recently registered to 131 Arnold Drive is false because only the tractor was registered

---

create an exception to *Franks* for when the affiant is "relying upon information or attestations from other law enforcement personnel.").

10

to 131 Arnold Drive is a true statement. The tractor, and not the trailer, is registered to 131 Arnold Drive. Setting aside the statement that the trailer was registered to the residence, there is still probable cause to believe that the offense of alien smuggling had occurred, and evidence of that crime was probably at 131 Arnold Drive. For instance, most drivers register their vehicles to a home residence or business. It is probable that evidence of a human trafficking crime would be at the residence to which the vehicle involved in the human trafficking was registered. It is probable to believe that other victims of human trafficking could have still been harbored at 131 Arnold Drive or that evidence of the deceased, such as personal possessions, were in the house. It is also probable that evidence of past human trafficking or an ongoing pattern of human trafficking, such as ledgers or records of payment, would be at the residence.

**2. Detective Corn's affidavit was not "bare bones" and the good-faith exception to the exclusionary rule applies.**

As discussed above, the good-faith doctrine precludes the suppression of evidence obtained pursuant to a warrant, unless one of a few narrow exceptions applies. One of those exceptions is a "bare bones" affidavit. A "bare bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a [judicial officer] can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). Bare-boned affidavits "do not detail any facts, they allege only conclusions." *Morton*, 46 F.4th at 337. As the Fifth Circuit has emphasized, examples of such affidavits typically include those that seek to establish probable cause by "merely stat[ing] that the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises." *See United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006); *see also United States v. Brown*, 567 F.App'x 272, 283 (5th Cir. 2014) (finding an affidavit

"bare bones" with respect to its explanation of a nexus between drug activity and the defendant's home where it referenced the defendant's home only when stating, in conclusory fashion, that "it also believed that additional narcotics and paraphernalia are located at Brown's residence").

The affidavit here was not bare bones. Detective Corn's affidavit went beyond simple conclusory statements and instead provided sufficient facts supporting a reasonable inference that evidence of alien smuggling could be found in the Arnold Drive house. The affidavit explained that the bodies of several deceased persons were located inside a tractor trailer, which had been recently registered to the Arnold Drive house. Gov. Exhibit 3 at 1 (131 Arnold Drive Search Warrant). The affidavit further described that a witness reported seeing a silver Ford truck with "FX4" leaving the scene. *Id*. When officers went to the Arnold Drive house, they saw a silver Ford truck with "FX4" on it at the residence, "which matched the description of the truck seen leaving the scene." *Id.* Two men were then seen leaving the house in the truck. *Id.* Those case-specific details were sufficient to allow a neutral judge to reasonably infer a probability that an alien-smuggling crime had occurred and that the Arnold Drive house could contain evidence of the crime. *See United States v. Wake*, 948 F.2d 1422, 1428 (5th Cir. 1991); *United States v. McKinney*, 758 F.2d 1036, 1043 (5th Cir. 1985) (an issuing judge is entitled to draw "reasonable inferences" from the evidence in the affidavit). Considering those detailed facts, this was not an affidavit that "allege[d] only conclusions." *Morton*, 46 F.4th at 337. And because the affidavit was not bare bones, the officers' reliance on the warrant was reasonable. *Id.* at 338. The good-faith exception therefore applied.

Although he invokes the bare-bones exception and cites *Morton*, D'Luna-Mendez does not really grapple with the Fifth Circuit's precedent holding that the exception only applies to affidavits that are "wholly conclusory." *See Morton*, 46 F.4th at 338. He instead seems to challenge

the probable-cause determination itself, contending that the facts in the affidavit failed to show a sufficient nexus between the illegal activity and the Arnold Drive house *Id.* at 13–14. But even assuming probable cause was debatable for these reasons, the en banc Fifth Circuit has held that "on close calls second guessing the issuing judge is not a basis for excluding evidence." *Morton*, 46 F.4th at 338. That there might have been additional evidence that could have been included in the affidavit that better connected the crime to the home does not render the affidavit bare bones. It was therefore reasonable to rely on the warrant and the application of the good-faith exception is proper.

### 3. The Bexar County magistrate judge had a substantial basis for finding probable cause and a nexus between the place to be searched and the evidence sought.

Because the good-faith exception so clearly applies here, the Court need not reach the substantive question of probable cause. *See United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988) ("Principals of judicial restraint and precedent dictate that, in most cases, [this Court] should not reach the probable cause issue if…the good-faith exception of *Leon* will resolve the matter."). That said, the state magistrate's probable cause determination was correct. A magistrate judge's determination of probable cause is entitled to great deference by reviewing courts. *United States v. Allen*, 625 F.3d 830, 840 (5th Cir. 2014). Probable cause to support a search warrant exists when the totality of circumstances allows a decision that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). It "does not require certainty"; it merely requires "a probability that contraband or evidence is located in a certain place." *United States v. Satterwhite*, 980 F.2d 317, 321 n.5 (5th Cir. 1992). It "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Further, affidavits setting forth probable cause must be reviewed "in a commonsense and realistic fashion." *May*, 819 F.2d

at 535.

Here, D'Luna-Mendez has failed to show that the affidavit in this case failed to supply sufficient facts demonstrating a fair probability that evidence of a crime would be found in the Arnold Drive house. "The critical element in a reasonable search is . . . that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). In making this determination, an issuing judge is entitled to draw "reasonable inferences" from the evidence in the affidavit. *See United States v. Wake*, 948 F.2d 1422, 1428 (5th Cir. 1991); *United States v. McKinney*, 758 F.2d 1036, 1043 (5th Cir. 1985).

Based on the totality of circumstances, there was probable cause to believe evidence of alien smuggling would be located inside the Arnold Drive house. As summarized above, the affidavit set forth sufficient facts for the state judge to conclude that a sufficient nexus existed between the evidence sought and the house. First, the tractor—the scene of mass causalities whom the magistrate could reasonably infer had been smuggled aliens—was registered to the Arnold Drive house. *See United States v. Robins*, 978 F.2d 881, 892 (5th Cir. 1992) ("A residence is a quite convenient, commonly used place for planning continuing criminal activities."). Second, an on-scene witness recalled seeing a gray Ford FX4 leaving the scene of the crime. A truck matching that description was then found parked at the Arnold Drive home, further confirming the house's connection to the crime. Officers observed two men leave the house and depart in the truck. Notably, a judge presiding in the southwest border region where alien smuggling is commonplace would know that aliens smuggled into the United States are generally harbored in stash houses, hidden away from law enforcement and law-abiding citizens. Smuggled aliens are often stripped of their personal possessions, such as cell phones or electronics. The magistrate could reasonably

infer that the Arnold Drive house—the residence to which the tractor containing 53 deceased aliens had been recently registered--would also contain either more aliens or evidence of alien smuggling, such as the personal documents or electronics of those who died in the tractor trailer or ledgers or evidence of alien smuggling payments. The judge could also reasonably infer that the truck seen leaving the mass casualty incident and the one seen at the Arnold Drive house were the same, and that the men leaving the residence in the truck were fleeing to avoid apprehension. So even if D'Luna-Mendez made a more compelling case that the good-faith exception did not apply, the state judge had a substantial basis for finding the existence of probable cause.

## CONCLUSION

For the reasons above, the government requests that the Court deny D'Luna-Mendez's request for an evidentiary hearing on the *Franks* issue because he has failed to satisfy his burden of making a substantial preliminary showing that statements within the warrant are false. The government further requests that the Court deny the motion on its merits.

Respectfully Submitted,

JAIME ESPARZA
United State Attorney

_____/s/_____
Sarah Spears
Assistant U.S. Attorney
Texas Bar No. 24117197
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
Tel: (210) 384-7068

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 13, 2023, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System, which will transmit notification of such filing to the parties of record.

/s/
Sarah Spears
Assistant United States Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| United States of America,<br>         Plaintiff,<br><br>v.<br><br>Juan Claudio D'Luna-Mendez (2),<br>         Defendant. | No. SA: 22-CR-00367-OLG |

## **ORDER**

On this date, the Court has considered Defendant's Amended Motion to Suppress and the Government's response. After careful consideration, the Court rules that Defendant's motion shall be DENIED.

IT IS SO ORDERED.

SIGNED and ENTERED this _____ day of _____, 2023.

_____
HONORABLE ELIZABETH S. CHESTNEY
United States Magistrate Judge