IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| *Plaintiff,* | § | SA-22-CR-00367-OLG |
| vs. | § | |
| (2) JUAN CLAUDIO D'LUNA-MENDEZ, | § | |
| *Defendant.* | § | |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Amended Motion to Suppress [#101], which was referred to the undersigned for a report and recommendation pursuant to Western District of Texas Local Rule CV-72 and Appendix C. The undersigned therefore has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Defendant's motion be denied.

## I. Background

Defendant Juan Claudio D'Luna Mendez is under indictment for being an alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A). On June 27, 2022, a tractor trailer containing 53 deceased migrants was discovered on the south side of Bexar County, Texas, near Quintana Road. The tractor's registration identified an individual (not Defendant) and the address of 131 Arnold Drive, San Antonio, Texas. At the time, Defendant resided at the residence along with numerous other family members. A search warrant was ultimately secured

1

later the same day to search the residence as part of the investigation into the smuggling and death of the migrants, resulting in the seizure of the firearms underlying Defendant's indictment.

Defendant now moves to suppress the firearms on the basis that the affidavit submitted to secure the search warrant of the residence contained false statements and omitted material information in violation of *Franks v. Delaware*, 438 U.S. 154 (1978), and was a conclusory, bare-bones affidavit insufficient to establish probable cause to search the residence. Defendant also argues that the good-faith exception to the exclusionary rule does not apply to the warrant at issue because of these issues with the affidavit and the absence of probable cause. The Government filed a response in opposition to the motion [#104], arguing that Defendant is not entitled to an evidentiary hearing on his *Franks* claim and asserting that the search warrant was supported by probable cause and was executed in good faith.

The Court held a live evidentiary hearing on the motion on October 23, 2023, at which counsel for the Government and Defendant appeared in person and provided oral argument on the motion and made a record on Defendant's *Franks* argument. Gerardo Sepulveda, II, a private investigator retained by Defendant to review video recordings and reports related to this case, also appeared and provided testimony. No other witnesses provided testimony. In addition to the testimony of Mr. Sepulveda, the parties introduced numerous exhibits into evidence, which included photographs and video recordings from law enforcement's body-worn cameras, certified transcriptions of recorded interviews with witnesses, investigation reports by law enforcement, and a declaration by Mr. Sepulveda.[1] In evaluating Defendant's motion, the undersigned has considered the Government's response in opposition to the motion [#104],

---

[1] The Government raised several objections to Defendant's exhibits, including Mr. Sepulveda's declaration, which were overruled by the Court for the reasons stated at the hearing.

2

Defendant's Supplement to Amended Motion to Suppress [#110], the arguments of counsel at the hearing, the evidence before the Court, and the governing law.

## II.  Analysis

Defendant asks the Court to suppress the evidence seized at the residence of 131 Arnold Drive on the basis that the search warrant affidavit contained misstatements and omissions material to the probable cause analysis in violation of the standards set forth in *Franks v. Delaware*.  The Court should reject Defendant's argument.  Defendant has failed to satisfy his burden to make a substantial showing that law enforcement knowingly, intentionally, or recklessly made a false statement in the affidavit or omitted material information from the affidavit so as to entitle Defendant to relief under *Franks*.  Furthermore, the affidavit is not an invalid bare-bones affidavit, and the search warrant was executed in good faith.

**A.      Defendant is not entitled to relief under *Franks v. Delaware*.**

The Fourth Amendment protects against unlawful searches and seizures and demands that entry into an individual's home be supported by consent, a valid warrant, or both probable cause and exigent circumstances.  *United States v. Jones*, 239 F.3d 716, 719 (5th Cir. 2001). Where a search is executed pursuant to a search warrant, as here, the warrant may only be issued upon a finding of probable cause.  *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991). Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

A "warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 165 (1978).  In *Franks*, the Supreme Court determined that criminal defendants have a limited right, under the Fourth and Fourteenth

Amendments, to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant, subsequent to the *ex parte* issuance of the warrant. *Id.* at 155–56. The *Franks*' rule is of "limited scope, both in regard to when exclusion of the seized evidence is mandated, and when a hearing on allegations of misstatements must be accorded." *Id.* at 167.

Under *Franks*, there is " a presumption of validity with respect to the affidavit supporting the search warrant." *Id.* at 171. In order to receive an evidentiary hearing on suppression, a defendant attacking the validity of an affidavit supporting a search warrant must make a "substantial preliminary showing" that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit, and (2) the remaining portion of the affidavit is insufficient to support a finding of probable cause. *Id.* at 171–72.

To make that substantial preliminary showing, a defendant's attack on an affidavit "must be more than conclusory" and "supported by more than a mere desire to cross-examine." *Id.* at 171. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* "Allegations of negligence or innocent mistake are insufficient." *Id.* A defendant challenging a probable cause affidavit "should point out specifically the portion of the warrant affidavit that is claimed to be false" and "affidavits or other sworn statements should be furnished." *Id.* "Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72. *See also United States v. Cavazos*, 288 F.3d 706, 709–10 (5th Cir. 2002) (When a warrant affidavit contains false information made intentionally or with reckless disregard for the truth, courts must "excise the offensive language

4

from the affidavit and determine whether the remaining portion would have established the necessary probable cause."). Ultimately, "[u]nder the Supreme Court's decision in *Franks*, a search warrant must be voided if the defendant shows by a preponderance of the evidence that the affidavit supporting the warrant contained a false statement made intentionally or with reckless disregard for the truth and, after setting aside the false statement, the affidavit's remaining content is insufficient to establish probable cause." *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017) (citing *Franks*, 438 U.S. at 155–65).

Defendant argues that there are material misrepresentations and omissions in the probable cause affidavit that, if disclosed, would have led an objective magistrate judge to conclude that there was not probable cause for the search. The affidavit at issue, which was authored and signed by Detective Mark Corn, contains the following statements in support of the application for a warrant to search the residence of 131 Arnold Drive. (Affidavit [#104-6], at 1–4.)

- On June 27, 2022, officers responded to a scene in the 9600 block of Quintana Road where the bodies of several deceased persons were located inside a tractor trailer.
- A witness reported seeing a silver Ford truck with "FX4" leaving the scene.
- The tractor trailer was recently registered to the house at 131 Arnold Drive.
- SAPD personnel went to 131 Arnold Drive and saw a silver Ford truck with "FX4" on it at the location.
- The truck matched the description of the truck seen leaving the scene on Quintana Road.
- Two males were seen exiting the house at 131 Arnold Drive and got into the silver Ford truck and left the location.
- The truck was later stopped and the occupants detained.
- It is believed that the occupants of the truck are involved in the offense of smuggling of persons and the house at 131 Arnold Drive may contain evidence related to the offense.

These statements are based on three interviews with a witness encountered at Quintana Road on the evening of June 27, 2022, which were recorded on various law enforcement officers' body cameras worn during the interview. Certified transcriptions and translations of the

5

interviews were admitted into evidence and can be found at Exhibit 1-A, 1-B, and 1-C, which are attached to the Government's response to Defendant's motion to suppress. (Exhibits [#104-2, 104-3, 104-4.) Defendant has also provided the Court with separate certified transcriptions and translations of the interviews by Defendant's transcriber, which are marked as Exhibits C-2, C-3-A, and C-6-A. Mr. Sepulveda's declaration, which was admitted over the Government's objection, is not a certified translation or transcription of the interviews but rather a summary of the interviews based on Sepulveda's independent review of the video recordings and an interview of the witness. (Sepulveda Decl. at ¶ 2.) Mr. Sepulveda testified at the Court's hearing that, although he is bilingual and a licensed private investigator, he is not a certified translator or transcriber. Finally, the record also contains a narrative investigative report prepared by of one of the interviewing law enforcement officers, Detective Matthew Robles. (Robles Report [#104-5].)

Defendant asserts that there are four misrepresentations in the affidavit. Defendant contends (1) the witness did not ever state that the truck observed at Quintana Road was silver; (2) the witness did not ever state that the truck observed at Quintana Road was a Ford; (3) the witness did not ever state that the truck observed at Quintana Road had the lettering "FX4"; and (4) only the tractor was registered to 131 Arnold Drive, not the tractor and the trailer.

Regarding the color of the truck, it is undisputed that the witness described the truck using the Spanish word "gris" for gray, rather than the word for silver. Both certified transcriptions represent the witness statement in this manner. Detective Robles nonetheless states in his report, as does Detective Corn in his affidavit, that the witness reported seeing a silver truck at the scene. Although there is undeniably a distinction in these two representations, the undersigned does not agree with Defendant that the distinction constitutes a materially false

statement affecting the probable cause inquiry. The colors gray and silver are often used interchangeably and create a similar visual sensation. A reasonable officer could infer that a truck described as gray could in fact be silver or a truck described as silver could in fact be gray. And an objective magistrate judge reviewing an affidavit would be unlikely to view a discrepancy in color between silver and gray as undermining the probable cause inquiry.

Regarding whether the witness described the truck as a Ford, a review of the certified transcriptions reflect that Defendant's argument misrepresents the record. The witness plainly told the investigating officer that he thought the truck was a Ford by stating in the second interview "me parece que era Ford," which was translated as "I think it was a Ford" by Defendant's translator and as "Ah, it looks like it was a Ford" by the Government's translator. According to the Government's transcription and translation, the witness also responded affirmatively when the officer asked him if the truck was a Raptor, which is a type of Ford truck. Detective Corn did not include a false statement in the warrant affidavit by stating that the witness reported seeing a Ford truck at the scene.

Relatedly, the affiant's statement that the witness reported seeing a truck with "FX4" on it was also not a false statement. According to the Government's transcription and translation, the witness described the truck as being "una de F de cuatro," which was translated to "a F of four," and when the interviewing officer asked the witness if the truck was an "FX Custom," he responded, "That one uh." Although the transcription and translation proffered by Defendant differs in some respects, Defendant has not established that the Government's certified translation is incorrect, only that the statements of the witness are subject to multiple interpretations due to the number of people interviewing him, the clarity of the witness's speech over the sound of overlapping voices, and the quality of the video recording.

Finally, the Court should also reject Defendant's argument that the affiant misrepresented the truth about the registration of the tractor-trailer, as the tractor was registered to 131 Arnold Drive but not the trailer. Although a tractor can detach from its trailer, this distinction is not one which would change the probable cause inquiry in this case. Over 50 deceased migrants were found inside a trailer attached to a tractor registered to 131 Arnold Drive. A magistrate presented with any registration linking any part of the vehicle to Defendant's residence would rely on this information in authorizing further investigation of the residence for additional living aliens or other evidence regarding the alien smuggling operation.

Nor has Defendant made a substantial showing that Detective Corn omitted material information regarding the truck in the probable cause affidavit. Defendant argues there are two omissions in the affidavit. First, according to Defendant, Detective Corn neglected to inform the Bexar County magistrate that the witness described the truck on Quintana Road as having nothing in the truck bed, whereas the truck observed at 131 Arnold Drive contained a brightly colored orange toolbox and other construction equipment in the truck bed. Based on a review of the certified transcriptions and translations, the undersigned disagrees with this characterization of the witness testimony. During the second interview, both certified transcriptions record an officer asking the witness, "did the truck have something in the back?" In response, it is undisputed that the witness stated, "No, it was uncovered." Defendant would like the Court to interpret this witness statement as meaning the witness described the truck bed itself as "empty and open." However, a truck with an "uncovered" back is not necessarily empty; the witness may have simply been attempting to convey that the truck bed did not have a truck bed cover.

Defendant has also not established that he is entitled to relief under *Franks* because Detective Corn omitted material information from the affidavit by failing to inform the

magistrate that the witness stated that the truck at Quintana Road said "Flasher" on the side. The Government concedes this was an omission in the affidavit. In the third interview, the witness clearly stated that the truck said "Flasher" when explaining that it also looked like a Ford. The undersigned agrees with Defendant that had the magistrate known that one of the trucks was observed as having the word "Flasher" on it, while the other was not, this fact could have undermined the credibility of the statement in the affidavit that the truck at 131 Arnold Drive matched the description of the truck at Arnold Road. However, to be entitled to relief under *Franks*, the Defendant bears the burden of making a substantial preliminary showing not just of a misrepresentation or omission in the affidavit but that the misrepresentation was knowing and intentional or made with reckless disregard for the truth. *Franks*, 438 U.S. at 171. Defendant has not made such a showing.

First, there is no evidence that Detective Corn had any knowledge of the witness statements regarding the word "Flasher" on the truck at the time he authored the affidavit. Detective Corn was not one of the interviewing officers. And Defendant did not present the Court with any testimony from any other witness who supplied the information to Detective Corn regarding the witness interview from which the Court could conclude that Detective Corn submitted the affidavit knowing of the omission or with reckless disregard for the omission. However, the undersigned agrees with Defendant that he could also make this showing by demonstrating that another law enforcement officer, aside from the affiant, intentionally withheld this information. *See id.* at 164 n.6 (noting the premise that "police could not insulate one officer's deliberate misstatement merely by relaying it through an officer-affiant personally ignorant of its falsity"); *see also United States v. Brown*, 298 F.3d 392, 408 (5th Cir. 2002) (Dennis, J., concurring) (embracing principle recognized by numerous other Circuit Courts of

Appeals that "a deliberate or reckless misstatement or omission by a government official who is not the affiant may nevertheless form the basis of a *Franks* claim"). Although this is true in principle, there is no evidence before the Court that any law enforcement officer intentionally or recklessly withheld the witness statements about the "Flasher" sign on the truck at Quintana Road. The Defendant asks the Court to make this inference based solely on the fact that the statement was omitted. The standard under *Franks* requires more. *Franks* only provides relief if there are "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. Here, Defendant has not made the requisite offer of proof.

Accordingly, the undersigned finds that Defendant has not made the required substantial showing of an intentional or reckless falsehood or disregard for the truth on behalf of the affiant and the investigating law enforcement officers. Therefore, Defendant is not entitled to relief under *Franks*, and the Court need not excise the alleged false statements and omissions to evaluate probable cause.

**B.      The good-faith exception to the exclusionary rule applies.**

Alternatively, even if there are no statements excised from the affidavit under *Franks*, Defendant argues that the evidence should be suppressed because there still was not probable cause to issue the warrant. The Court need not reach a determination on probable cause because the good-faith exception to the exclusionary rule applies and prevents suppression of the challenged evidence seized as a result of the search of Defendant's residence.

Even if a warrant is deemed to lack probable cause after a search warrant has been executed, the fruit of the search may still be admissible under "the good-faith exception" to the warrant requirement if the executing officer's reliance on the warrant "was objectively

reasonable and made in good faith." *United States v. Woerner*, 709 F.3d 527, 533 (5th Cir. 2013); *see also United States v. Leon*, 468 U.S. 897, 920–21 (1984). In other words, if the officers obtained the evidence "in objectively reasonable good-faith reliance upon a search warrant," the evidence is admissible "even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006).

The good-faith exception does not apply in certain circumstances, however, such as when the affidavit is based on false statements and omissions (the *Franks* exception addressed herein) or when the warrant is so facially deficient in failing to particularize the place to be searched or things to be seized that executing officers cannot reasonably presume it to be valid (i.e., the affidavit is a bare-bones affidavit). *Woerner*, 709 F.3d at 534. Defendant argues that the affidavit at issue here constitutes a bare-bones affidavit and therefore renders the search warrant invalid and the good-faith exception to the exclusionary rule inapplicable. The Court should also reject this argument.

Bare-bones affidavits "contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). For example, affidavits "that merely state that the affiant has cause to suspect and does believe or has received reliable information from a credible person and does believe that contraband is located on the premises" are bare bones. *United States v. Huerra*, 884 F.3d 511, 515 (5th Cir. 2018) (internal quotations and citations omitted); *see also United States v. Brown*, 567 Fed. App'x 272, 283 (5th Cir. 2014) (finding an affidavit "bare bones" with respect to its explanation of a nexus between drug activity and the defendant's home where it referenced the defendant's home only when stating,

11

in conclusory fashion, that "it is also believed that additional narcotics and paraphernalia are located at Brown's residence"). The Court makes the "bare bones" determination by evaluating the totality of the circumstances. *United States v. Robinson*, 741 F.3d 588, 597 (5th Cir. 2014) (citing *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994)).

Here, the affidavit provides specific information regarding the discovery of deceased migrants in a tractor-trailer registered to the address to be searched. The affidavit also provides specific information regarding witness statements about a Ford truck seen leaving the scene at Quintana Road that matched the description of the truck seen leaving the residence. These are case-specific details from which the magistrate judge could infer that an alien-smuggling crime had occurred, and the residence at 131 Arnold Drive could contain evidence of the crime under investigation. *See United States v. McKinney*, 758 F.2d 1036, 1043 (5th Cir. 1985) (an issuing judge is entitled to draw "normal inferences" from the evidence in the affidavit). Although there could certainly have been more information included in the affidavit connecting the alien-smuggling activity and the residence at Arnold Drive, this is not a basis for excluding the seized evidence. The bare-bones exception only applies to affidavits that are "wholly conclusory." *United States v. Morton*, 46 F.4th 331, 336 (5th Cir. 2022). Because the affidavit was supported by more than mere conclusory assertions, it was not bare bones and does not render the good-faith exception to the exclusionary rule inapplicable.

## IV.  Conclusion and Recommendation

Having considered Defendant's motion to suppress, the related filings, the evidence adduced at the live hearing, and the arguments of counsel, the undersigned recommends that Defendant's Amended Motion to Suppress [#101] be **DENIED**.

### V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Objections are limited to no more than 20 pages unless leave of court is granted.  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

    SIGNED this 13th day of December, 2023.

*[signature]*
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE